In the Matter of HARBOR HILLS COUNTRY CLUB, INC., Petitioner, v. ROBERT E. DOYLE et al., Constituting the STATE LIQUOR AUTHORITY, Respondents.— Proceeding pursuant to article 78 of the CPLR to annul respondents' determination, dated July 28, 1971, which suspended petitioner's liquor license for 10 days, with service of the suspension deferred, and made a demand for payment on petitioner's bond to the extent of $500. Determination confirmed and proceeding dismissed on the merits, with costs. In our opinion, the determination under review was supported by substantial evidence and was neither harsh nor excessive. Hopkins, Acting P. J., Christ, Brennan and Benjamin, JJ., concur; Gulotta, J., dissents and votes to annul the determination, with the following memorandum: This proceeding involves the review of a determination by the State Liquor Authority (1) holding petitioner guilty of violating subdivision 6 of section 106 of the Alcoholic Beverage Control Law in that it had permitted gambling to take place in the licensed premises and (2) assessing penalties therefor. Petitioner is a private golf club in Suffolk County. On October 24, 1970 two detectives posing as prospective members talked to Mr. Smith, the general manager of the club, who showed them about and left them at the bar to have a drink. He was in and out of the bar several times during the next hour before he left the premises and went to Port Jefferson on an errand. During the course of 15 minutes after he was gone the detectives observed a Mr. "Buddy" Mogk come into the bar, engage in conversation with several club members and take a number of bets on horse races, which he recorded on a pad. The detectives put Mogk under arrest. Mogk was a former part-time bartender at the club during the summer, but was not so employed there at the time of this incident. The only person employed by the club who observed his activities was the bartender, Mr. Tedesco, who was not arrested at that time, although he was arrested three days later in a transparent attempt to link the licensee with the gambling. He had handed Mogk the pad on which he was writing. "Suffering or permitting" something to happen necessarily imports some kind of knowledge on the part of the principal. In the case of a corporate licensee, that involves deciding whose mental awareness to impute to the corporation. In this case, in my opinion, that would be Smith, who had been put in charge of the entire club operation by the officers of the corporation and who spent 16 hours a day there. Certainly it was not Tedesco, who deposed that he knew of Mogk's activities during the summer but did not inform Smith of them because he knew that Smith would fire Mogk. Thus there was no actual knowledge on the part of the licensee and

there is absent here a fair measure of continuity or permanence from which to imply knowledge (*Matter of Migliaccio* v. *O'Connell,* 307 N. Y. 566). As was appropriately observed by the Court of Appeals in *Matter of Playboy Club of N. Y.* v. *State Liq. Auth.* (23 N Y 2d 544, 550), "It is still the rule, as this court recently reaffirmed in the *Missouri Realty* case (22 N Y 2d, at p. 237), that conduct is not 'suffered or permitted' unless '"the licensee or his manager knew or should have known"' of the asserted disorderly condition of the premises and tolerated its existence." In *Matter of 2125 Barney's* v. *New York State Liq. Auth.* (16 A D 2d 252, 254), which similarly to this case involved imputation of knowledge of gambling to a licensee through the bartender, the Appellate Division, First Department, rejected the notion, unless there was "a showing of circumstances raising an inference that the licensee did knowingly allow the gambling to occur or to continue on his premises, or by the showing of a demonstrated attitude towards the same tending to indicate acquiescence therein." The proof shows that the licensee never acquiesced tacitly or otherwise in gambling, but on the contrary went to extraordinary lengths to prevent it.