■ In the Matter of ROBERT W. COLLINS, Petitioner, v STATE LIQUOR AUTHORITY, Respondent.—Proceeding pursuant to CPLR article 78 to review two determinations of respondent, both dated November 26, 1974, (1) one (a) revoking petitioner's special on-premises liquor license, effective December 3, 1974, and (b) imposing a $1,000 bond claim and (2) the other, *inter alia,* (a) disapproving petitioner's renewal application and (b) recalling the license theretofore issued to petitioner pursuant to a renewal stipulation. By order of this court dated March 24, 1975 this matter was remitted to respondent for clarification of its revocation order and, in the interim, the proceeding was held in abeyance. Pursuant to that order respondent has submitted an "amended and corrected revocation order" which clarifies the bases upon which it revoked petitioner's license, with a $1,000 bond claim. The first above-mentioned determination is modified, on the law, by (1) annulling respondent's findings numbered "1" and "4" and (2) reducing the penalty to a forfeiture of petitioner's $1,000 bond. As so modified, determination confirmed, without costs. The second above-mentioned determination is confirmed, without costs. Petitioner is the sole owner of a tavern located in Bay Shore, New York. In September, 1973, respondent instituted a proceeding to revoke petitioner's special on-premises liquor license. After a lengthy hearing the tavern owner's license was revoked and a $1,000 bond forfeited because he (a) permitted the premises to become disorderly on April 4–5, 1973, when petitioner's employee assaulted a patron (Alcoholic Beverage Control Law, § 106, subd 6), (b) sold alcoholic beverages to two minors on December 12, 1972 (Alcoholic Beverage Control Law, § 65) and (c) suffered and permitted the premises to become disorderly on September 24, 1973, when another of petitioner's employees and petitioner's brother sold narcotics to an undercover detective. As to the assault, the record reveals that on the evening in question a fight broke out between a patron and one of petitioner's bartenders. After the combatants had been separated and restrained another bartender struck the patron on the head with an ax handle. Although petitioner was present when the altercation took place, we

find no basis upon which he can be held to have "suffered or permitted" the disorder. It is well settled that a licensee cannot be held liable for every single act of his employees (see *Matter of Playboy Club of N. Y. v State Liq. Auth.,* 23 NY2d 544). It must be shown that the licensee knew or should have known of the disorderly condition and nevertheless tolerated its existence. In the present case the bartender who assaulted the patron had been employed on a part-time basis for approximately four months. Absent in the record is any showing of a similar occurrence by this or any other employee or a showing that petitioner participated in or sanctioned the bartender's conduct, or even that he was aware of it until it was too late. Moreover, the mere fact that the ax handle was found behind the bar, hence establishing that the licensee had constructive knowledge of its presence, is inadequate to demonstrate that he should have known that his employee would use the instrument injudiciously. Similarly, petitioner cannot be held liable for the events which transpired on September 24, 1973. On that occasion an undercover detective obtained a marijuana cigarette concealed in a package of ordinary cigarettes from a different bartender. Later that evening the same detective purchased narcotics from petitioner's brother, a mere patron, in the presence of that bartender. At the time of the transaction petitioner was not present in the premises. Significantly, the purchases took place at a time when the licensee was regularly absent. Thus it cannot be said that he can be charged with actual or constructive knowledge of the incident. Indeed, respondent predicated its finding upon the ground that the employee "in charge" of the premises participated in and condoned the prohibited conduct, thereby imputing his knowledge to the licensee. However, "an employee's illegal activities will not necessarily be imputed to the corporate licensee. It must be demonstrated that the manager or a corporate officer had knowledge or the opportunity through reasonable diligence to acquire knowledge of the illegal acts" *(Matter of Triple S. Tavern v New York State Liq. Auth.,* 40 AD2d 522, affd 31 NY2d 1006). Although petitioner admitted that the bartender was "in charge" during his brief absence, there is no evidence in the record that the bartender is a manager, officer or one possessed with managerial authority (see *Matter of Leake v Sarafan,* 35 NY2d 83, 87). Conversely, we find substantial evidence in the record to support the charge of selling alcoholic beverages to minors. The question now becomes whether the penalty of revocation, based upon that single charge, is excessive. The standard of review is whether the punishment was "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" *(Matter of Stolz v Board of Regents of Univ. of State of N. Y.,* 4 AD2d 361, 364; see *Margar Rest. Corp. v State Liq. Auth.,* 34 AD2d 828). In our opinion, revocation would be entirely disproportionate and the penalty has therefore been reduced to a bond forfeiture of $1,000. Finally, petitioner argues that to annul or modify the determination revoking his license and yet uphold the nonrenewal of his license would constitute an incongruous decision. Petitioner fails to grasp the essential difference between the two administrative actions. An application for renewal of a liquor license is to be regarded in the same light as the original application for a license (see *Matter of Farina v State Liq. Auth.,* 20 NY2d 484, 491). Here the standard for review is "whether the record discloses circumstances which leave no possible scope for the reasonable exercise of that discretion" *(Matter of Stracquadanio v Department of Health of City of N. Y.,* 285 NY 93, 96; *Matter of Wager v State Liq. Auth.,* 4 NY2d 465). In addition to the charges sustained at the revocation hearing and incorporated as part of the nonrenewal proceeding, other specifications,

including the fact that a letter of warning had been sent to petitioner because of an altercation in the licensed premises on May 5, 1971, a seven-day suspension for sale of alcoholic beverages to minors on February 24, 1973, and a sale of alcoholic beverages on credit in violation of subdivision 5 of section 100 of the Alcoholic Beverage Control Law, were also sustained. Prior adverse history may properly be considered in determining whether a license should be renewed (see *Margar Rest. Corp. v State Liq. Auth., supra).* Considering this adverse history in conjunction with the charge properly sustainable, it cannot be said that respondent's actions were arbitrary and capricious. Gulotta, P. J., Martuscello, Latham, Cohalan and Shapiro, JJ., concur.