■ In the Matter of MARY G. MARTIN, Petitioner, v STATE LIQUOR AUTHORITY, Respondent.—Proceeding pursuant to CPLR article 78 to review respondent's determination, made December 4, 1974, which (1) suspended petitioner's special on-premises liquor license, (2) deferred the imposition of the said suspension and (3) imposed a $1,000 bond claim. Determination annulled, on the law, and charges dismissed, without costs. There was not substantial evidence in the record to support a finding that petitioner knew of or suffered gambling on her premises. The mere fact that a nonmanagerial employee took bets on six occasions while petitioner was absent, and that when arrested she was in possession of betting slips, was not sufficient to show that petitioner should have known of the gambling activity had she exercised due diligence to discover such activity (see *Matter of Triple S. Tavern v New York State Liq. Auth.,* 31 NY2d 1006, affg 40 AD2d 522). Rabin, Acting P. J., Hopkins, Christ and Shapiro, JJ., concur; Munder, J., dissents and votes to confirm the determination, with the following memorandum: I disagree with the majority's conclusion that there was not substantial evidence to support the finding that petitioner suffered or permitted gambling on her premises. True, there was ample support for the finding that petitioner had no actual knowledge of the gambling, but the record shows sufficient circumstances to hold that petitioner had the opportunity, through reasonable diligence from which to acquire knowledge. There was substantial evidence to infer the licensee's complicity in permitting gambling (see *Matter of Leake v Sarafan,* 35 NY2d 83, 86). Specifically, I refer to the fact that during the four-week period when the undercover police officer witnessed the barmaid on the premises engaging in gambling activities on six different occasions, the licensee spent only minutes a day on the premises. This is in sharp contrast to the situation in *Matter of Triple S. Tavern v New York State Liq. Auth.* (40 AD2d 522, affd 31 NY2d 1006), where the licensee's president and sole shareholder personally operated and managed the tavern on an average of 17 hours a day. Here, instead, petitioner allowed the barmaid to operate the premises alone for a full eight hours each day, including the hours between noon and 2:00 P.M. when bets

are usually placed on horse races. The gambling had more than a fair measure of continuity and permanence, viz., the search of the bar, etc., on the police officer's sixth visit uncovered a slip of paper on the back bar containing nine race horse bets; $45 and a slip containing approximately 142 mutual race horse policy plays were recovered from the barmaid's purse. The hearing officer found, and had basis for finding, that the barmaid was the sole representative of management during her eight-hour shift and that "although her managerial or supervisory responsibilities were limited, she was in charge of the premises during those hours." In other words, in this case, the employee's knowledge of (and participation in) the gambling could properly be imputed to her employer. Respondent's determination should not be disturbed (see, generally, *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck,* 34 NY2d 222).